[Sloss-Sheffield S. & I. Co. v. Scivally.]

# Sloss-Sheffield S. & I. Co. *v.* Scivally.

### Injury to Servant.

(Decided June 15, 1916.   72 South. 349.)

1. **Master and Servant; Injury to Servant; Unsafe Appliance.**—The evidence examined and held sufficient to authorize a submission to the jury of the question of defendant's negligence, it appearing that the intestate, a servant of defendant, was killed by the overturning of a heavy crane while engaged in operating such crane.

2. **New Trial; Insufficient Evidence.**—The action of the court in refusing to grant a new trial because of insufficiency of the evidence to support the verdict will not be reviewed where there was a conflict in the evidence.

3. **Appeal and Error; Review; Evidence.**—Where one of plaintiff's witnesses admitted a personal difficulty between himself and the master mechanic of defendant, but no questions were asked him as to any bad feelings existing, or any bias or ill-will against defendant, the refusal of the court to permit proof of the details of such difficulty and of the fact that an indictment had been found against the witness was proper.

APPEAL from Colbert Circuit Court.

Heard before Hon. C. P. ALMON.

Action by Ruth K. Scivally as administratrix of the estate of D. W. Scivally, for damages for the death of her intestate. Judgment for plaintiff and defendant appeals.   Affirmed.

TILLMAN, BRADLEY & MORROW, and L. C. LEADBETTER, for appellant. KIRK, CARMICHEAL & RATHER, for appellee.

GARDNER, J.—Suit by apepllee, as administratrix of the estate of her husband, Daniel W. Scivally, against the appellant for the recovery of damages for the death of her husband, who was killed in November, 1913, during the course of his employment as a "crane man" of the defendant company, by the falling of a crane from defendant's trestle at its furnace in Sheffield, Ala.   The cause went to the jury on count A of the complaint, which, after alleging that the intestate was operating the crane, averred that "the trestle upon which it rested gave way and the crane toppled over and fell from said trestle down to the ground," and that the defect consisted in this:   "The said trestle on which the said crane rested was improperly constructed and unsafe

in this: It was not sufficiently braced and supported;" concluding with proper charges of negligence under the statute.

The defendant set up as its defense, by special pleas in varying forms, the duty of intestate to fasten the crane to the rail of the track by means of "clamps" or "dogs," and his negligent failure so to do.

The evidence for the plaintiff tended to show that this trestle —which was about 20 feet high and differently estimated as being from 100 to 200 yards long—was defective in its not having "X" braces on the "bents" or legs which hold the trestle up. To use the language of one of the witnesses, "an X brace on bents means a brace that runs in the shape of an X, and these bents under that trestle had no such braces." A trestles of this character is built without cross-ties for the reason that ore is dumped from the bottom of the cars through the trestle. This trestle had been completed a little more than a year before the accident. The weight of the crane was betwen 100,000 and 120,050 pounds.

"The crane operated a shovel for the removal of ore; it had a boom pole 50 feet long, with a grab bucket on the end to grab up ore or other material. The shovel was attached to the boom by wire ropes. The boom was 50 feet long from the machinery and you could elevate it at any angle you wanted it, and the bucket was attached to two wire ropes which came over through two wheels at the end of the boom and was operated by a drum and a little engine same as a locomotive, which lets the bucket down and pulls it up. The bucket lets down or pulls up by a drum or rope or chain. The drum is a spool-like arrangement which the rope winds on. The boom was movable; two ropes elevated it to any angle you wanted it."

There was evidence for the plaintiff to the effect that, at the time of the accident, the crane had been properly fastened to the rails. While the plaintiff's intestate was engaged in operating this crane, which was in the line of his employment and under the direction of the master mechanic, the crane "turned turtle," and the intestate received the injuries from which he subsequently died. One of plaintiff's witnesses, one Highfield, who was working at the same place at that time, testified to the unsafe condition of the trestle on account of its being without X braces, and further testified that two or three days before the accident the track was out of line. To quote the witness: "I went and lined it back; the rails were thrown out of line, and I lined it back,

me and the carpenter foreman. I did not tell Mr. Lemay any-thing about the condition of the trestle at the time it was thrown out of line. I told Mr. Williams. When they threw it out of line, it cut down seven or eight bolts just like a knife had cut them. I carried the bolts to the office and showed them to Mr. Williams."

This witness further testified that, on the morning of the day of the accident, the track had jumped out of line, and that he informed Mr. Lemay, the master mechanic in charge of the work, that it was unsafe for the crane to be operated on that trestle, and he also so informed the intestate. This was denied by Lemay. Some of the bents or legs of the trestle were broken. Defendant insisted that this was caused by the crane in its fall, while it was the insistence of plaintiff that the giving way of the bents is what caused the accident, and that they gave way because not sufficiently braced.

A detailed review of the evidence would serve no good pur-pose. Suffice it to say it has been most carefully examined, and that, in the conclusion we have here reached, due consideration has been given to the evidence of the defendant, tending to show the good condition of the trestle and its constant use for more than a year.

(1) The court charged the jury in writing, as requested by defendant, and it is not insisted on this appeal that there was error in the general charge of the court. There were several special charges given at the request of defendant. The issues were plainly and fairly presented by the court, in the general charge as well as in special charges given at defendant's request, to the jury for their determination. That the evidence in the case was sufficient for submission to the jury under count A is too clear for discussion.

(2) The assignment of error on this appeal, to which counsel for appellant attach-most importance, is the refusal of the court to grant a new trial upon the ground that the verdict of the jury was contrary to the weight of the evidence. After a most careful consideration of the record, we are not convinced that, under the well-established rule of the case of *Cobb v. Malone,* 92 Ala. 630, 9 South. 738, reversible error can be predicated upon this action of the court.

(3) The two remaining assignments of error relate to the refusal of the court to permit proof of the details of the difficulty between one of the witnesses for plaintiff and the master me-

chanic for the defendant, and of the fact of an indictment pending against said witness, growing out of the difficulty, after the witness had admitted that he had had a personal difficulty with the said master mechanic. No questions were asked the witness as to any bad feeling existing, or any bias or ill will. It is clear that reversible error could not be rested upon this action of the court.

We find no error in the record calling for reversal of the cause, and the judgment will accordingly be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.